**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | **CIVIL ACTION NO. 3:23-CR-166** |
| **v.** | : | **(JUDGE MANNION)** |
| **BRIAN FOSTER,** | : | |
| **Defendant** | : | |

**<u>MEMORANDUM</u>**

Before the court is Defendant Brian Foster's motion for discovery.
(Doc. 13). Defendant, an inmate at the Federal Correctional Institute at
Schuylkill, asks the court to order the government to produce certain
information that would potentially support a future motion to dismiss the
indictment, (Doc. 1), which charges Defendant with one count of knowingly
possessing a prohibited object in violation of 18 U.S.C. §1791(a)(2).

Defendant requests all incident reports from the last three years
recording only the possession of contraband, all "Referral of an Inmate
Criminal Matter for Investigation" forms for that period relating to such an
offense, and "Inmate Load Data" (which includes demographic data) for the
inmates who were the subjects of these forms. (Doc. 26 at 5–6; Doc. 13 at
2–3).

## I.   LEGAL STANDARD

This motion must first be contextualized by reference to its end goal. Today, Defendant seeks certain pieces of information about incidents where other inmates at FCI-Schuylkill committed the offense charged here. He suspects that this information will evidence selective enforcement of the law against Black and Hispanic inmates. Eventually, he intends to pursue dismissal of the indictment on this basis. But the court is not now asked to dismiss the indictment; it is called only to decide whether the government should be ordered to produce the information Defendant seeks.[1]

The Constitution's Equal Protection Clause "prohibits selective enforcement of the law based on considerations such as race." *Whren v. United States*, 517 U.S. 806, 813 (1996). A substantive claim of selective enforcement is evaluated under the same standard as one of selective prosecution, *United States v. Washington*, 869 F.3d 193, 214 (3d Cir. 2017), for which a "defendant must 'provide evidence that persons similarly situated

---

[1] Criminal defendants are generally entitled, upon request, to documents and objects that are "within the government's possession, custody, or control and … material to preparing the defense." Fed. R. Crim. Pro. 16(a)(1)(E)(i). But discovery of "reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in investigating or prosecuting the case" is not authorized. Rule 16(a)(2). It has been recognized that discovery requests like this one "exist outside the framework" of Rule 16. *United States v. Washington*, 869 F.3d 193, 222 (3d Cir. 2017).

- 2 -

have not been prosecuted' and that 'the decision to prosecute was made on the basis of an unjustifiable standard, such as race, religion, or some other arbitrary factor.'" *United States v. Taylor*, 686 F.3d 182, 197 (3d Cir. 2012) (quoting *United States v. Schoolcraft*, 879 F.2d 64, 68 (3d Cir. 1989)). "The defendant bears the burden of proof, and must establish each of these elements with 'clear evidence' sufficient to overcome the presumption of regularity that attaches to decisions to prosecute." *Id.* (quoting *United States v. Armstrong*, 517 U.S. 456, 464 (1996)).

The standard for obtaining discovery on each of these claims, however, is distinct. Though they describe its requirements somewhat differently, the parties agree that *United States v. Washington*, 869 F.3d 193 (3d Cir. 2017) governs.  Before *Washington*, the standard for discovery on selective prosecution claims, established by *United States v. Armstrong*, 517 U.S. 456 (1996) and *United States vs. Bass*, 536 U.S. 862 (2002), had been applied also in the selective enforcement context. The *Armstrong/Bass* standard requires "some evidence" of discriminatory intent, which evidence must "include a showing that similarly situated persons were not prosecuted." *Washington*, 869 F.3d at 214–15.

Reasoning that "the special solicitude shown to prosecutorial discretion … does not inevitably flow to the actions of law enforcement, or

even to prosecutors acting in an investigative capacity," and that challenges to law enforcement policy do not implicate immunity in the same way as those to prosecutorial acts, *Washington* concluded that "motions for discovery seeking information on putative claims of unconstitutional selective enforcement are not governed by strict application of the *Armstrong/Bass* framework." *Id.* at 220. "Nevertheless, … courts contemplating" such motions "must still be guided by the spirit of *Armstrong/Bass*." *Id.*

So "[w]hile *Armstrong/Bass* remains the lodestar, a district court retains the discretion to conduct a limited pretrial inquiry into the challenged law-enforcement practice on a proffer that shows 'some evidence' of discriminatory *effect*." *Id.* at 220–21 (emphasis added).

> Distinct from what is required under *Armstrong/Bass*, a defendant need not, at this initial stage, provide "some evidence" of discriminatory *intent*, or show that (on the effect prong) similarly situated persons of a different race or equal protection classification were not arrested or investigated by law enforcement. However, the proffer must be strong enough to support a *reasonable inference of discriminatory intent and non-enforcement.*
>
> *Id.* at 221 (emphasis added).

If the court is presented with evidence meeting this threshold, it has discretion to conduct further inquiry. *Id.* This inquiry, though, must remain "cabined to … considerations of judicial economy and the need to avoid protracted pretrial litigation of matters collateral to the upcoming trial." *Id.* And

- 4 -

"the district court must be mindful that the end 'goal' of such a discovery motion is a valid claim of selective enforcement under the heightened substantive standards." *Id.*

## II.   DISCUSSION

Defendant has been charged with one count of possessing contraband in prison, in violation of 18 U.S.C. §1791. (Doc. 1). He submits, and the government confirms, that since 2020 there have been 39 cases charging FCI-Schuylkill inmates with only possession of contraband—"contraband only" cases. (Doc. 14 at 3; Doc. 21 at 4). Thirty of those inmates, including Defendant, are Black; eight are Hispanic, and one is white. (Doc. 21 at 7).

The inmate population at FCI-Schuylkill is 1,027, consisting of 638 Black inmates, (Doc. 21-2), 195 white inmates, (Doc. 21-1), 188 Hispanic inmates, (Doc. 21-3), 4 Asian inmates (Doc. 21-4), and 2 Indian inmates. (Doc. 21-5). White inmates thus constitute almost 19% of the population, while Black inmates constitute about 62% and Hispanic inmates about 18%.

In addition to this demographic data, the government has provided FCI-Schuylkill's "Incident Report FBI Referrals" policy, which indicates that incident reports of possession of contraband must be forwarded to the Special Investigative Supervisor for FBI referral. (Doc. 21-6).

According to the government, the race of FCI-Schuylkill inmates charged with a contraband-only offense "is largely consistent with" the overall racial composition of FCI-Schuylkill. (Doc. 21 at 14). Defendant, meanwhile, points out that white inmates, of whom 1 in 195 were charged with a contraband-only offense, were about nine times less likely to be prosecuted for such an offense than Black and Hispanic inmates, who collectively were prosecuted at a rate of about 1 in 22. (Doc. 26 at 3–4). Assuming that white inmates have been found in possession of contraband during this time, he argues, these statistics do show a "racial ethnic skew in the identities of those prosecuted." (Doc. 26 at 4 (quoting Doc. 21 at 14)).

The government asserts that Defendant has failed to offer evidence supporting a reasonable inference of discriminatory intent and non-enforcement. (Doc. 21 at 12, 15). It also suggests that Defendant must "prove discriminatory intent" and offer "non-statistical evidence" and "comparisons to similarly situated white inmates who were not prosecuted." (Doc. 21 at 12–13). But *Washington* tells us that "a defendant need not, at the initial stage, provide 'some evidence' of discriminatory intent, or show that (on the effect prong) similarly situated persons of a different race … were not arrested or investigated by law enforcement." 869 F.3d at 221.

What the court must first determine is whether the evidence offered by Defendant, namely, statistics comparing the racial makeup of contraband-only defendants to that of the overall FCI-Schuylkill population, "support[s] a reasonable inference of discriminatory intent and non-enforcement." *Washington*, 869 F.3d at 221.

*Washington* involved a "stash house reverse sting" operation.[2] *Id.* at 196. The district court had denied the defendant's pretrial motion for discovery on ATF operations and enforcement statistics, employing the *Armstrong/Bass* test. *Id.* at 197. The Third Circuit vacated the district court's discovery orders and remanded for a new decision under the framework described above. *Id.* at 222.

-----

[2] The basic framework of these operations has been explained as such:

For decades, the Bureau of Alcohol, Tobacco, and Firearms ("ATF") has conducted reverse sting operations in order to identify and apprehend people who can be enticed into robbing fictitious drug "stash houses" (houses in which drugs are "stashed"). In these "stash house stings," an undercover agent poses as a disgruntled drug courier with knowledge about a stash house protected by armed guards and containing a large amount of cocaine. The agent suggests to targets of the reverse sting that they join forces, rob the house, and split the proceeds. Once the targets have taken steps to rob the fictional house, they are arrested and charged with conspiracy to violate federal narcotics laws.

*United States v. Pedrin*, 797 F.3d 792, 794 (9th Cir. 2015).

- 7 -

In his renewed motion for discovery pertaining to a claim of selective enforcement, the defendant in *Washington* submitted statistics showing that four stash house operations in the District of New Jersey from 2009 to 2014 involved 20 African Americans; that from 2011 to 2018 "six fictitious stash house robbery prosecutions in New Jersey all involved individuals of color"; and that "ten identified stash house stings in the Eastern District of Pennsylvania and District of New Jersey involv[ed] a total of 37 defendants of color"; all compared to census data showing the racial composition of these districts. *United States v. Washington*, 2021 WL 120958, at *11 (E.D. Pa. 2021) ("*Washington Remand*"). The district court granted the defendant's request, ordering the government to produce a list of all defendants in every stash house robbery sting conducted by ATF from 2009 to 2014 prosecuted in the Third Circuit, the defendants' races, information about informants, and information about ATF sting investigations that did not result in arrest or prosecution. *Id.* at **10–12.

That information showed that out of the 123 individuals who were the subjects of these investigations, only 4 were white. *Id.* at *12. Based on this statistic, the defendant filed a second discovery motion, seeking additional information that tended to show racial bias or discrimination. *Id.* at *13. The district court found that "[t]he statistic that nearly ninety-seven percent of the

targets of fictitious stash house robbery investigations in the Third Circuit from 2009 to 2014 were persons of color was a racial disparity that warranted additional discovery for the purpose of proving discriminatory intent." *Id.* at *15.

Similarly, the defendant in *United States v. Brooks* sought discovery of information like that requested by the *Washington Remand* defendant's first renewed discovery motion. 2019 WL 258694, at *3. He pointed to the fact that the government had brought five recent stash house sting cases, and that all of the defendants in each "were either African-American or minority." *Id.* at *2. The district court found that "at this stage, Brooks ha[d] presented a sufficient proffer to support a 'reasonable inference' of discriminatory intent." *Id.* at *4. "That all of the recent prosecutions supposedly involved only African-American or minority defendants may be enough, if true, to obtain additional discovery." *Id.*

The court finds that the showing in this case is not strong enough to support a reasonable inference of discriminatory intent and non-enforcement. Though the statistics offered here present a racial disparity in the rate of prosecution of white inmates compared to non-white inmates, it is in a sample of only 39. That a relatively low number of white inmates, already a significant minority in the prison population, have been prosecuted for this

uncommon charge is an insufficient basis on which to reasonably infer that officials have been discriminating against non-white inmates in their enforcement decisions.

Moreover, stash house sting operations of the type at issue in *Washington Remand* and *Brooks* are meaningfully different from contraband investigations in a prison. In those contexts, the government operates among the public, and it affirmatively decides whom to investigate. This tactic "empower[s] law enforcement to craft offenses out of whole cloth." *Washington*, 869 F.3d at 197. At a prison, by contrast, the pool of potential targets is limited. And unlike in a sting operation, the investigation of a contraband-only offense like that charged here is directed only to whether a suspect *has already committed* the offense. The targets self-select by obtaining contraband in the first place. While it is conceivable that law enforcement officers could decide to prosecute some contraband-possessors instead of others because of their race, "the potential for abuse and mischief" is less inherent than that in a sting operation. *Id.* at 223 (McKee, J., concurring). Therefore, what is sufficient to support a reasonable inference of discrimination in that context is not necessarily sufficient in this one. The court finds that the showing here is insufficient.

III.   **CONCLUSION**

For these reasons, the court concludes that Defendant's proffer does not "show[] 'some evidence' of discriminatory effect." *Washington*, 869 F.3d at 220–21. Therefore, the court will not order the government to produce the items requested by Defendant. Defendant's motion for discovery, (Doc. 13), will be denied. An appropriate order will follow.


_____
**MALACHY E. MANNION**
**United States District Judge**

**DATE: November 6, 2023**
23-166-01

- 11 -